FILED
AUG 13 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERNEST DESROSIERS,

        Plaintiff,

                                      CV 09-1201-PK

v.                                   OPINION AND
                                      ORDER

HUDSON SPECIALTY INSURANCE
COMPANY,

        Defendant.

PAPAK, Judge:

        Plaintiff Ernest Desrosiers ("Desrosiers") suffered an injury on the premises of Mary's Club, a bar owned by Mary's Fine Food, Inc. ("Mary's"). He now seeks to recover damages and attorney fees from defendant Hudson Specialty Insurance Company ("Hudson"), Mary's Fine Food's insurer. In a settlement agreement, Mary's assigned its rights under the Hudson policy to Desrosiers. Hudson filed a counterclaim and a third-party claim against Mary's, and its owners,

Page 1 - OPINION AND ORDER

Roy and Vicki Keller, seeking a declaratory judgment that it had no duty to defend or indemnify Mary's or the Kellers for Desrosiers' claim. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Currently pending are the parties cross-motions for summary judgment on Hudson's duty to indemnify.[1] For the reasons set forth below, Desrosiers' Motion for Summary Judgment (filing #54) is denied, and Hudson's Motion for Summary Judgment (filing # 49) is granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth and must construe the evidence in the light most favorable to the nonmoving party. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the non-moving party. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may not grant summary judgment if the court

---

[1] The parties previously filed cross-motions for summary judgment on the validity of the assignment of policy rights between Mary's and Desrosiers, and on Hudson's duty to defend.

Page 2 - OPINION AND ORDER

finds unresolved issues of material fact, even in situations where the cross motions allege that no disputed facts exist. *Id.*

## FACTS

### A. The Night at Mary's Club

On approximately November 28, 2007, Desrosiers and his friend Jessie went to Mary's Club before attending a concert at a nearby venue. (See, filing #51, Hudson's Concise Statement of Material Fact, Ex. 1 ("Desrosiers Dep.") at 8.) Desrosiers exchanged innocuous pleasantries with another Mary's Club patron, Paul Whisenhunt ("Whisenhunt"). (Id. at 9.) Desrosiers and his friend left for the concert without incident. (Id.)

After the concert, Desrosiers and Jessie returned to Mary's Club. (Id. at 10.) They sat at the foot of the dance stage, and Desrosiers sat immediately next to Whisenhunt. (Id. at 11.) Desrosiers and Whisenhunt initially engaged in harmless conversation about things such as the concert and the girls who were dancing. (Id. at 12.) Then Whisenhunt asked if he could borrow twenty dollars from Desrosiers. (Id. at 13.) Desrosiers obliged, and Whisenhunt spent the money buying alcohol and tipping the dancers. (Id.) At the time of this first loan, Desrosiers described Whisenhunt as a "little bit" impaired, and compared to when he saw him prior to the concert Whisenhunt was "getting louder" and "yelling at the girls, giving them the yah ha wah." (Id. at 14.) After Whisenhunt went through the twenty dollar loan, he left for approximately fifteen minutes, then returned with $200 out of which he repaid the loan from Desrosiers. (Id. at 15-17.)

Desrosiers estimates that within about an hour Whisenhunt had spent his remaining $180 on more alcohol and tips, and then he asked Desrosiers for another twenty dollar loan. (Id. at 19.) Again, Desrosiers made the loan. (Id.) Desrosiers explains that by this time "Whisenhunt

Page 3 - OPINION AND ORDER

seems to get more inebriated," (id. at 10), and Whisenhunt became belligerent with Desrosiers. (See, e.g., filing #3, Answer, Ex. 7 ("Underlying Amended Complaint") at 5.) Desrosiers finally decided to leave Mary's Club because he "[j]ust wanted to remove [himself] from Whisenhunt's presence." (Desrosiers Dep. at 27.) Desrosiers told his friend Jessie he was leaving, and Jessie implored him to wait so he could finish his drink. (Id. at 26.) Desrosiers agreed to wait but said that he would wait outside. (Id.)

Desrosiers got up to leave and Whisenhunt followed. (Id. at 27.) As Desrosiers walked out the door, Whisenhunt kicked him in the leg from behind. (Id.) Desrosiers fell to the ground, and Whisenhunt stood over him repeatedly stating "You had enough? You had enough?" (Id. at 28.) Soon thereafter, Jessie came outside and asked of Whisenhunt, "What the hell are you doing to my friend?" (Id. at 22.) Then Whisenhunt "attacked Jessie." (Id. at 23.) According to Desrosiers, Whisenhunt "started beating" Jessie, "smacked him in the face," broke his nose, and grabbed his hair "swinging him around." (Id. at 22-24.) According to Desrosiers, Whisenhunt was "out of control." (Id.)

The blow from Whisenhunt's kick shattered Desrosiers' ankle and resulted in metal plates having to be surgically placed in his leg to repair the damage. (Id. at 29.) On April 1, 2008, Desrosiers filed a personal injury lawsuit against Whisenhunt and the owners of Mary's Club. (See, Filing #3, Answer, Ex. 1 ("Underlying Original Complaint").)

## B. The Terms of the Insurance Policy

Under Mary's policy with Hudson, Hudson agreed to pay "all sums which the insured shall become legally obligated to pay as damages because of injury . . . sustained by any person if such liability is imposed upon the insured by reason of the selling, serving or giving of any

Page 4 - OPINION AND ORDER

alcoholic beverage at or from the insured premises." (Answer, Ex. 2 at 7.) The policy also contains an endorsement that specifically excludes coverage for assault and battery. Under the heading "Assault and Battery Exclusion -- Absolute," the policy states, "This insurance does not apply to claims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the insured, and/or his employees." (Id. at 8.)

## C. The Underlying Lawsuit And Settlement

In his April 1, 2008 complaint, Desrosiers sued Mary's Club owners alleging in part that Whisenhunt "followed [Desrosiers] outside of the club and struck [Desrosiers], kicking [Desrosiers] in the ankle, breaking [Desrosiers'] left ankle." (Underlying Original Complaint at 2.) In that Underlying Original Complaint, Desrosiers also sued Whisenhunt asserting that he "intentionally assaulted" Desrosiers. (Id. at 4.)

In a letter dated February 25, 2009, Mary's tendered defense of the lawsuit to Hudson. (Answer, Ex. 3.) On April 1, 2009, Hudson refused to defend citing the policy's assault and battery exclusion. (Answer, Ex. 4.) On May 15, 2009, Mary's again tendered defense of the claim to Hudson based on a proposed amended complaint (which was ultimately never filed). (Answer Ex. 5.) This proposed complaint replaced the allegations that Whisenhunt struck and kicked Desrosiers with an allegation stating that "a scuffle or other contact between plaintiff and defendant Whisenhunt ensued, resulting in plaintiff's left ankle being broken." (Answer Ex. 5 at 1, 3.) The intentional assault claim against Whisenhunt remained as is in this proposed amended complaint. (Id. at 5.) Hudson again refused to defend citing the assault and battery exclusion. (Answer Ex. 6.)
Page 5 - OPINION AND ORDER

Ultimately, Desrosiers and Mary's settled. On June 24, 2009, Mary's stipulated to the entry of a general judgment in the amount of $125,000. (Filing #7, Nepom Aff. Ex. 2.) On the same day, and in conjunction with filing the general judgment, Desrosiers also filed an Amended Complaint. This Amended Complaint once again changed the description of the incident, stating "contact occurred between [Desrosiers] and defendant Whisenhunt which Whisenhunt claims was his accidentally contacting [Desrosiers], resulting in [Desrosiers'] left ankle being broken." (Answer, Ex. 7 at 5.) The Amended Complaint omits the intentional assault claim against Whisenhunt.

Desrosiers contends that the resulting "judgment was entered upon the proof at the prima facie trial that Mr. Whisenhunt was served by Mary's Fine Foods, Inc. while visibly intoxicated and that Mr. Whisenhunt was negligent in injuring plaintiff while visibly intoxicated." (Filing # 55, Pl's Br. at 3.) Desrosiers also asserts "that the only claims that proceeded to trial and resulted in the judgment against Mary's Club were based upon the negligent conduct of Whisenhunt and the negligent conduct of Mary's." (Id.) The record of what Desrosiers refers to as a "trial" has not been submitted as evidence in this case. It is clear from the general judgment that Mary's did not appear when the stipulated general judgment was entered. (Filing #7, Nepom Aff. Ex. 2.)

Under the terms of their settlement agreement, Mary's assigned its rights under the Hudson insurance policy to Desrosiers. (Id. at Ex. 3.) In exchange, Desrosiers agreed not to execute the judgment against Mary's and agreed to execute a satisfaction of judgment upon final resolution of the claim against Hudson. (Id.) On July 2, 2009, after Desrosiers signed the settlement agreement, but before Mary's signed, Desrosiers contacted Hudson, stating that he anticipated that Mary's would assign him its rights under the policy, and demanding that Hudson

Page 6 - OPINION AND ORDER

pay Desrosiers' damages and Mary's defense costs. (Answer, Ex. 7.) The letter included a copy of the Amended Complaint that was filed in conjunction with the general judgment on June 24, 2009 (Id.)

## LAW AND ANALYSIS

Desrosiers' primary contention is that the general judgment in the underlying case, which was based on the Amended Complaint devoid of any allegations of intentional assault, precludes Hudson from asserting the assault and battery exclusion of the policy applies. Hudson contends that it is entitled to offer proof of facts demonstrating the assault and battery exclusion applies to bar coverage of Desrosiers' claims.

### I. Issue Preclusion

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984). Under Oregon law, issue preclusion arises "when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or. 99, 103, 862 P.2d 1293, 1296 (1993). For issue preclusion to apply, the following requirements must be met: (1) the issue in the two proceedings must be identical; (2) the issue must have actually been litigated and have been essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded must have had a full and fair opportunity to be heard on the issue; (4) the party sought to be precluded must have been a party or in privity with a party in the prior proceeding; and (5) the prior proceeding must have been the type of proceeding to which courts give preclusive effect. *Id.* at 104, 862 P.2d 1296-97. The party asserting issue preclusion has the

Page 7 - OPINION AND ORDER

burden of proving the first, second and fourth of those requirements. *Barackman v. Anderson*, 214 Or.App. 660, 667, 167 P.3d 994, 999 (2007), *rev. den.*, 344 Or. 401, 182 P.3d 200 (2008).

With respect to the first requirement, "the party asserting estoppel bears the responsibility of placing into evidence the prior judgment and sufficient portions of the record, including the pleadings, exhibits, and reporter's transcript of the testimony and proceedings" to enable the court to determine whether the issue in the two proceedings are identical "with the requisite degree of certainty." *State Farm v. Century Home*, 275 Or. 97, 104, 550 P.2d 1185, 1188 (1976). Although the Amended Complaint and general judgment from the underlying action have been made part of this record, Desrosiers submitted nothing further to support his assertion that some sort of trial was held, that testimony was taken, that evidence was submitted in the underlying case, or that any factual findings were made. As a result, I am unable to determine whether any ultimate facts were determined or what those ultimate facts might be.

Even if Desrosiers had submitted the entire record from the underlying case, his attempt to assert issue preclusion most certainly fails on the second requirement. The issue of whether Desrosiers' injuries were caused by an assault and battery was not "actually litigated" in the case below. It is undisputed that Desrosiers and Mary's Club entered into a settlement agreement. It is undisputed that they stipulated to a judgment. It is undisputed that Mary's Club was not even present at the time the Amended Complaint and judgment were entered. Accordingly, there were no claims presented or defended by either party, no "actual litigation" ensued, and no ultimate facts were determined by the underlying court.

Because it is abundantly clear from the first two elements that the underlying judgment has no preclusive effect on this case, and because Desrosiers does not address any of the

Page 8 - OPINION AND ORDER

elements in his brief, I need not address the remaining factors. Desrosiers failed to meet his burden of proof to invoke issue preclusion, and as a result his motion for summary judgment is denied. Hudson is not precluded from asserting that Desrosiers' injuries arose out of an assault or battery which is excluded from coverage by the terms of the policy.

## II. The Duty to Indemnify

I turn now to the substantive coverage issue – whether Hudson breached its duty to indemnify by denying coverage based on a policy exclusion. In Oregon, the duty to indemnify is independent of the duty to defend. *Northwest Pump v. American States Ins. Co.*, 144 Or.App. 222, 227, 925 P.2d 1241, 1243 (1996). While the duty to defend depends on the allegations of the complaint, the duty to indemnify "is established by proof of actual facts demonstrating a right of coverage." *Id.* It is the insured's burden to prove a policy affords coverage, and the insurer's burden to prove the policy excludes coverage. *Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or.App. 485, 509, 156 P.3d 105, 119, *rev. den.*, 343 Or. 363, 169 P.3d 1268 (2007).

The parties do not dispute the applicability or meaning of the policy terms, and I previously found the assault and battery exclusion to be unambiguous. The only question before me is whether there are factual disputes in this record that Desrosiers' assigned claims under the policy arose out of an "assault and/or battery."

"Battery" is a voluntary act that is intended to cause the resulting harmful or offensive contact. *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249, 551 P.2d 1269, 1271 (1976); *Brown v. Far West Federal*, 66 Or.App. 387, 390, 674 P.2d 1183, 1185 (1984). Assault is "an intentional attempt to do violence to the person of another coupled with present ability to carry the intention into effect." *Cook v. Kinzua Pine Mills Co. et al.*, 207 Or. 34, 48, 293 P.2d 717, 723 (1956).

Page 9 - OPINION AND ORDER

There is undisputed evidence in the record that Whisenhunt's actions constitute battery. First, it is undisputed that Whisenhunt committed the voluntary act of kicking. There is no probative evidence that he stumbled, tripped, was pushed into, or otherwise accidently ran into Desrosiers. He kicked Desrosiers.

Second, that the kick was "intended to cause the resulting harmful and offensive contact" is also supported by undisputed facts. There was animosity between the two men, Whisenhunt was being belligerent to Desrosiers, and as a direct result of that animosity and belligerence Desrosiers wisely felt the need to "remove myself from Whisenhunt's presence." But, Whisenhunt was not done with Desrosiers. He followed Desrosiers out the door and kicked him so hard that it not only knocked him down, but the kick shattered his ankle. If there could be any doubt about Whisenhunt's intent at this point, that doubt is resolved with Whisenhunt's post-kick comments and actions. Whisenhunt did not say "excuse me" or "I'm sorry," as one might expect would happen if this had been mere accidental or negligent contact. Instead, Whisenhunt was poised to fight. He stood over Desrosiers and in classic bar-brawl style continued the torment, challenging "You had enough? You had enough?" He then turned on Desrosiers' friend Jessie, who ultimately suffered a broken nose from the melee.

The above undisputed facts all come straight out of Desrosiers' deposition testimony, and he has submitted no contradictory evidence to survive summary judgment. There is no testimony from other witnesses from which to infer something different happened. There is no testimony from Whisenhunt claiming that it was all an accident. In fact, the only *suggestion* that Whisenhunt's behavior was something other than battery comes in the form of the Amended Complaint. However, the Amended Complaint was drafted by Desrosiers' attorney who deleted

Page 10 - OPINION AND ORDER

all facts and allegations related to battery in what can only be explained as an attempt to invoke coverage under the Hudson policy. Self-serving and uncorroborated evidence does not suffice to create a genuine issue of fact for trial. *See, Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996).

Even viewing the evidence and drawing all inferences in a light most favorable to Desrosiers, no reasonable jury could conclude that Whisenhunt's contact with Desrosiers was anything other than battery. Accordingly, I find that there is no genuine issue of material fact in dispute, and that the assault and battery exclusion applies to preclude coverage as a matter of law. Hudson's Motion for Summary Judgment is granted.

## CONCLUSION

Desrosiers' Motion for Summary Judgment (#54) is denied, and Hudson's Motion for Summary Judgment is granted (#49).

Dated this 13th day of August, 2010.

*Paul Papak*

Honorable Paul Papak
United States Magistrate Judge

Page 11 - OPINION AND ORDER